*In re* NEGP

Docket No. 226663. Submitted March 7, 2001, at Grand Rapids. Decided
    March 16, 2001, at 9:05 A.M.

The Family Independence Agency petitioned the Emmet Circuit
    Court, Family Division, seeking to terminate the parental rights of
    the mother of N.E.G.P., an infant. Although the mother incorrectly
    identified the child's father, during the proceedings the petitioner
    determined that Jeffrey L. Hosler might be the father. The peti-
    tioner sent Hosler a letter indicating his possible paternity of the
    child. Hosler replied by letter and offered to take a blood test,
    which showed a 99.42 percent probability that Hosler was the
    father. In the meantime, the court entered an order terminating the
    mother's parental rights. The petitioner filed a supplemental peti-
    tion, asserting that Hosler was the child's father and seeking termi-
    nation of his parental rights. It was brought to the court's attention
    on the second day of the termination hearing that Hosler possibly
    had an affiliation with a Native American tribe. The court, Freder-
    ick R. Mulhauser, J., directed the petitioner to send notice of the
    proceedings to the tribe to which Hosler alleged affiliation, but
    continued with the proofs. At the end of the hearing, the court
    again advised the petitioner to talk with Hosler regarding his possi-
    ble tribal membership and to notify the tribe. The petitioner sub-
    mitted a request to the Secretary of the Interior for a search to
    identify the child's possible Native American ancestry. Included in
    the paperwork submitted was a form indicating that the child's
    tribe was possibly the Anishinabee tribe. The Secretary of the Inte-
    rior responded, indicating that no information was available regard-
    ing the tribal membership or tribal affiliation of the child or the
    child's parents. The court thereafter entered an order terminating
    Hosler's parental rights to the child, apparently accepting the letter
    as conclusive evidence regarding the matter. Hosler appealed, alleg-
    ing, in part, the failure to follow the procedures and standards set
    forth in the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*,
    for child custody proceedings involving foster care placement of or
    termination of parental rights to an Indian child.

    The Court of Appeals *held*:

1. The petitioner did not comply with the requirements of the ICWA. There was no conclusive determination regarding the child's status as an "Indian child" under the ICWA. There is no evidence that the tribe was notified as required by the ICWA.

2. The respondent received proper notice after paternity was established.

3. The respondent was not denied due process by the court's adjournment of the termination hearing to consider the issue raised by the respondent regarding the child's possible Native American ancestry.

4. The court did not err in finding that the petitioner established the statutory grounds for termination with clear and convincing evidence.

5. The matter must be remanded to allow the petitioner to provide the tribe proper notice. On remand, the court must determine whether the tribe meets the definition of an "Indian tribe" in the ICWA. If the tribe concludes that the child is not an Indian tribe member and both not eligible for Indian tribe membership and not the biological child of an Indian tribe member, or if the tribe chooses not to intervene, or if the court determines that the tribe is not an "Indian tribe" as defined in the ICWA, then the order terminating the respondent's parental rights is affirmed by the Court of Appeals.

6. If the tribe concludes that the child is an Indian tribe member or both eligible for Indian tribe membership and an Indian tribe member's biological child, and if the tribe chooses to intervene, and if the court determines that the tribe is an "Indian tribe" as defined in the ICWA, then the order terminating the respondent's parental rights is reversed by the Court of Appeals and the trial court must conduct new proceedings in accordance with the ICWA.

Remanded.

1. INDIANS — INDIAN CHILD WELFARE ACT — WORDS AND PHRASES — INDIAN CHILD.

An "Indian child" for purposes of the federal Indian Child Welfare Act is any unmarried individual less than eighteen years of age who is either an Indian tribe member or both eligible for Indian tribe membership and an Indian tribe member's biological child; whether a person is a member of a tribe is a question for the tribe itself to answer (25 USC 1903[4]).

2. Indians — Parent and Child — Termination of Parental Rights — Indian Child Welfare Act.

The failure to comply with the requirements of the federal Indian Child Welfare Act may render invalid a proceeding terminating parental rights (25 USC 1914).

3. Indians — Parent and Child — Termination of Parental Rights — Indian Child Welfare Act.

The special notice requirements stated in the federal Indian Child Welfare Act apply in an involuntary proceeding in a state court regarding a party seeking the foster care placement of or termination of parental rights to a child where the court knows or has reason to know that an Indian child is involved (25 USC 1912[a]).

4. Indians — Indian Child Welfare Act — Words and Phrases — Indian Child — Indian Tribe.

The federal Indian Child Welfare Act does not apply to proceedings where the child involved is not an "Indian child" as defined in the act; lack of enrollment in a Native American tribe is not conclusive with regard to the issue whether the child qualifies as an Indian child; the question whether the child is a member of a tribe is for the tribe itself to answer where the tribe meets the definition of "Indian tribe" contained in the act (25 USC 1903[4], [8]).

*Robert J. Engel*, Prosecuting Attorney, and *Jennifer Herschelman*, Assistant Prosecuting Attorney, for the petitioner.

*Finney, Lewis, Juneau, Henderson & Scully* (by *George R. Lewis*), for the respondent.

Before: Saad, P.J., and Fitzgerald and O'Connell, JJ.

O'Connell, J. Respondent appeals as of right from a family court order terminating his parental rights to his minor child pursuant to MCL 712A.19b(3)(g), (i), and (j). We remand for further proceedings.

Petitioner initiated termination proceedings against the child's mother shortly after the child's birth in October 1998. At the time, the mother incorrectly identified a man other than the respondent as the child's father. The court terminated the mother's

parental rights on January 15, 1999, on the basis that her parental rights to five other children were terminated in the past. During the proceedings, however, petitioner determined that respondent might be the child's father. On January 4, 1999, petitioner sent a letter to respondent, who was incarcerated, indicating his possible paternity of the child. Respondent replied by letter on January 9, 1999, and offered to take a blood test. The test results, returned on June 25, 1999, showed a 99.42 percent probability that respondent was the child's father. On July 16, 1999, petitioner filed a supplemental petition for termination of respondent's parental rights, asserting that respondent was the biological father of the child.

During the second day of respondent's termination hearing, January 10, 2000, counsel for respondent brought to the court's attention the possibility that respondent had an affiliation with a Native American tribe. The trial court directed petitioner to send notice of the proceedings to the tribe to which respondent alleged affiliation, but continued with the proofs in the case. At the end of the hearing, the trial court again advised petitioner to talk with respondent about his possible tribal membership and to notify the tribe about the proceedings.

The next day, January 11, 2000, petitioner submitted a request to the Secretary of the Interior for a search to identify the child's possible Native American ancestry. The paperwork contained information regarding the child, respondent, and the child's paternal grandparents and great-grandparents. The form indicated that the child's tribe was possibly the Anishinabee tribe. The notice indicated the applicable tribe's right of intervention. A letter from the Secre-

tary of the Interior responding to the request, dated February 7, 2000, indicated that there was no information available regarding the tribal membership or tribal affiliation of the child or her parents. The family court apparently accepted the letter as conclusive evidence regarding the matter.

Respondent first argues that the family court erred in failing to conclusively determine the child's status as an "Indian child" under the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, before the close of proofs. We agree and remand. Whether the court failed to satisfy the ICWA involves a legal question of statutory interpretation that we review de novo. *In re SD*, 236 Mich App 240, 243; 599 NW2d 772 (1999); *In re IEM*, 233 Mich App 438, 443; 592 NW2d 751 (1999).

The ICWA sets forth specific procedures and standards for child custody proceedings involving foster care placement of or termination of parental rights to an Indian child. *Id.* One of the ICWA's requirements is that an interested Indian tribe receive notice of termination proceedings involving Indian children:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or

the Secretary: *Provided,* That the parent or Indian custo-
dian or the tribe shall, upon request, be granted up to
twenty additional days to prepare for such proceeding. [25
USC 1912(a).]

For purposes of the ICWA, an "Indian child" is any
unmarried individual less than eighteen years of age
who is either (1) an Indian tribe member or (2) both
eligible for Indian tribe membership and an Indian
tribe member's biological child. 25 USC 1903(4).

We recognize the general principle that failure to
comply with the requirements of the ICWA may render
invalid a proceeding terminating a parent's rights, 25
USC 1914; *In re Elliott,* 218 Mich App 196, 209; 554
NW2d 32 (1996); *In re HD,* 11 Kan App 2d 531, 532;
729 P2d 1234 (1986); *In re Junious M,* 144 Cal App 3d
786, 791; 193 Cal Rptr 40 (1983), and we conclude
that petitioner in this case did not comply with the
requirements of the ICWA. The special notice require-
ments apply when a court "knows or has reason to
know that an Indian child is involved . . . ." 25 USC
1912(a). Here, the trial court did not learn of the
child's possible Indian heritage until the second day
of respondent's termination hearing. The court
directed petitioner to investigate the matter and con-
tinued with the proofs in the case, noting that it might
have to ultimately judge the proofs using an increased
standard if the child was later determined to be an
Indian child under the ICWA. See 25 USC 1912(f); MCR
5.980(D).[1] The record reflects that petitioner sent

---

[1] 25 USC 1912(f) provides that a termination of parental rights must be
"supported by evidence beyond a reasonable doubt, including testimony
of qualified expert witnesses, that the continued custody of the child by
the parent or Indian custodian is likely to result in serious emotional or
physical damage to the child." MCR 5.980(D) contains similar language.

notice of the proceedings by registered mail, return receipt requested, to the Secretary of the Interior in accordance with 25 USC 1912(a). Nevertheless, the statute also required petitioner to send notice to the child's tribe. Both the court and petitioner knew or had reason to know, by virtue of petitioner's inclusion of "Anishinabee" on the forms that it mailed to the Secretary of the Interior, that the child was potentially a member of that tribe. The lower court record contains no proof that petitioner either sent the tribe the required notice, return receipt requested, or that the tribe responded to any notice. Petitioner never indicated that it could not determine the location of the tribe. Therefore, petitioner did not comply with the requirements of 25 USC 1912(a).[2] Further, in continuing with the proofs, the trial court did not follow the statute's mandate that "[n]o . . . termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary." 25 USC 1912(a).[3]

---

[2] The present case is distinguishable from *In re IEM, supra.* In that case the petitioner's sending of the required notice to the Secretary of the Interior alone was enough to satisfy 25 USC 1912(a) because the child's possible Native American heritage was unspecified. *In re IEM, supra* at 448.

[3] MCR 5.965(B)(7) states that at the preliminary hearing, the court "shall inquire if the child or parent is a registered member of any American Indian tribe or band, or if the child is eligible for such membership." Respondent argues that the court's failure to make this inquiry invalidated the proceedings below. We note that the trial court did not hold a preliminary hearing because the child was already in foster care after the termination of the parental rights of the child's mother. In our view, the court's failure to question whether the child or one of her parents was a registered member of, or eligible for membership in, an American Indian tribe or band, may have been an additional factor in determining whether the court knew or had reason to know that the child was an "Indian child." However, because we have already determined that the court and peti-

The ICWA does not apply to proceedings where the child involved is not an "Indian child." *In re Colnar*, 52 Wash App 37, 41; 757 P2d 534 (1988); *In re Appeal in Maricopa Co Juvenile Action*, 136 Ariz 528, 532; 667 P2d 228 (Ariz App, 1983). The lack of enrollment in a Native American tribe is not, however, conclusive of the issue whether a child qualifies as an "Indian child." *In re IEM, supra* at 445; *In re Hunter*, 132 Or App 361, 364; 888 P2d 124 (1995).[4] Rather, the question whether a person is a member of a tribe is for the tribe itself to answer. *In re IEM, supra* at 447-448; *In re JW*, 498 NW2d 417, 422 (Iowa App, 1993); *In re Colnar, supra* at 39; *In re Junious M, supra* at 792. On remand, petitioner must provide proper notice to the Anishinabee tribe and the court must determine whether the Anishinabee tribe meets the definition of "Indian tribe" contained in 25 USC 1903(8). If the tribe concludes (1) that the child is not an Indian tribe member and (2) that she was both not eligible for Indian tribe membership and not an Indian tribe member's biological child, 25 USC 1903(4), or if the tribe chooses not to intervene, or if the court determines that the tribe is not an "Indian tribe" as defined in 25 USC 1903(8), then the order terminating respondent's parental rights is affirmed. If the tribe concludes (1) that the child is an Indian tribe member or (2) that she is both eligible for Indian tribe member-

---

tioner did not comply with the requirements of 25 USC 1912(a), we need not discuss the issue further.

[4] In *In re Shawboose*, 175 Mich App 637, 639; 438 NW2d 272 (1989), a panel of this Court stated that a parent's enrollment in an Indian tribe was a prerequisite to a child's qualification as an "Indian child" under 25 USC 1903(4). The panel in *In re IEM, supra* at 445, n 3, concluded that *Shawboose* could not be read to require enrollment as a prerequisite to the application of the ICWA. We follow *In re IEM*, which was issued after November 1, 1990. MCR 7.215(H)(1).

ship and an Indian tribe member's biological child, and if the tribe chooses to intervene, and if the court determines that the tribe is an "Indian tribe" as defined in 25 USC 1903(8), then the order terminating respondent's parental rights is reversed and the trial court must conduct new proceedings in accordance with the ICWA. *In re IEM, supra* at 450; *In re Junious M, supra* at 798.

Next, respondent argues that, as the child's putative father, he was not provided proper notice of the original termination proceedings in accordance with our court rules. Whether a court has personal jurisdiction over a party is a question of law that we review de novo on appeal. *In re Terry,* 240 Mich App 14, 20; 610 NW2d 563 (2000). We note that respondent did not raise this argument below and so it is not preserved for our review. In any event, his argument is without merit. Respondent could not have been considered the father of the child as defined in MCR 5.903(A)(4), or a putative father of the child under MCR 5.921(D), until the paternity test results were received in June 1999. Because respondent did not establish paternity until June 1999, he was not entitled to notice of the proceedings until that time. See *In re Gillespie,* 197 Mich App 440, 442-446; 496 NW2d 309 (1992).

Respondent also argues that the lower court's adjournment of the termination hearing on October 21, 1999, denied him due process. A court's ruling on a motion for a continuance is discretionary and we review it for an abuse of discretion. *In re Jackson,* 199 Mich App 22, 28; 501 NW2d 182 (1993). We reject this argument. Although respondent argues that the adjournment denied him due process, he was the per-

son who raised the issue that caused the adjournment.

Finally, our review of the record leads us to conclude that the family court did not clearly err in finding that petitioner established the statutory grounds for termination with clear and convincing evidence. MCR 5.974(I); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). Further, the evidence did not show that termination of respondent's parental rights was clearly not in the child's best interests. MCL 712A.19b(5); *In re Trejo Minors*, 462 Mich 341, 354; 612 NW2d 407 (2000). Thus, the family court did not err in finding that petitioner established the statutory grounds for terminating respondent's parental rights to the child.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.