Taylor, J.
This Court granted leave to appeal limited to the issue whether a putative father has standing to intervene in a child protective proceeding under the juvenile code[1] in which the child involved has a legal father. The Court of Appeals determined that the putative father had standing. We reverse the decision of the Court of Appeals and hold that the putative father did not have standing to intervene. We remand to the Court of Appeals to consider appellee’s remaining issues.
*195 I
A child protective petition alleging abuse and neglect, brought pursuant to MCL 712A.2(b), was filed on July 31, 1998 on behalf of three minor children, including “CAW” The petition stated that Robert Rivard was the legal father of the children, but might not have been the biological father of “any or all of the children.” In particular, on the issue of paternity, the petition indicated that CAW was the child of Larry “Hier.”[2]
Accepting the petition’s assertion that Heier’s address was unknown, the court, to give Heier notice of the child protective proceedings scheduled for August 19, 1998, issued an order for alternative service by publication.[3]
At the August 19, 1998, hearing, at which Heier did not appear, the court decided that the children should remain in foster care. Later, at a pretrial conference on September 3, 1998, Rivard and Weber asserted that Rivard was the father of all three children. The court, after questioning Rivard and Weber, accepted this as fact and the petition was amended accordingly, including deleting any further reference to Heier. From this point on, the court and the parties in all proceedings referred to Rivard as the children’s father.
In December 1999, well over a year later, progress toward reunification of the family was unsatisfactory. A petition was filed by the Family Independence Agency to terminate Rivard and Weber’s parental *196 rights pursuant to MCL 712A.19b.[4] The proceedings that ensued culminated in an order terminating Rivard and Weber’s parental rights on November 13, 2000.
On January 25, 2001, Weber appealed the termination adjudication to the Court of Appeals.[5] At the same time, Heier filed a motion in the trial court seeking to intervene in the child protective proceeding concerning CAW. Heier alleged that he was the biological father of CAW and had standing on that basis. He also argued, in essence, that the trial court had failed to provide him with adequate notice of the child protective proceedings and that he was entitled to notice pursuant to the United States Constitution regardless of whether the statutes or court rules gave him standing. In asserting that claim, he gave the court factual information regarding his relationship with the child both before and dining the child protective proceedings in support of his constitutional claims.
The trial court denied Heier’s motion to intervene on the ground that Heier lacked standing because CAW had a legal father. The court reasoned:
It is clear that you cannot have a legal father and a punitive [sic] father. In this case we did have a legal father. [CAW] was bom—conceived and bom during the marriage between Miss Weber and Mr. Rivard. There has never been any dispute whether he was or was not the legal father. . . . *197 [It had been determined that (Rivard) was the legal father, and once that determination was made all proceedings were geared toward (Rivard’s) rights to all three children.]
On appeal, Heier argued, and the Court of Appeals agreed, that the termination of Rivard’s legal rights at the conclusion of the child protective proceeding was effectively a finding “by judicial notice or otherwise” that CAW was not the issue of the marriage. A divided panel of the Court of Appeals, agreeing only that it was troubling that the law should be interpreted to mean that Heier had no opportunity to establish his paternity, reversed the order of the trial court. The majority held that there was standing under the juvenile code for putative fathers. 253 Mich App 629, 631; 659 NW2d 657 (2002). It reasoned that even though “Rivard may still meet one or several of the definitions listed for ‘father’ in MCR 5.903(A)(4),” because his rights were now terminated he no longer had any legal rights as father. 253 Mich App 640. This, the majority concluded, opened the door for the putative father to have standing to establish his paternity. Id. at 644. The Court, having resolved the matter favorably to Heier on the basis of the statute and court rules at issue, determined it unnecessary to deal with the constitutional issues Heier had raised. Id. at 633.
We granted leave to appeal limited to the issue whether a putative father has standing to intervene in a child protective proceeding under the juvenile code in which the subject child has a legal father.
II
This is a question involving the construction of a statute, which we review de novo. Robertson v *198 DaimlerChrysler Corp, 465 Mich 732, 739; 641 NW2d 567 (2002).
III
In this matter, Larry Heier, claiming paternity of CAW, sought to intervene in child protective proceedings brought pursuant to MCL 712A.2(b)(l) and (2).[6] Intervention in such a proceeding is controlled by MCR 5.921(D). This court rule states that a putative father is entitled to participate only “[i]f, at any time during the pendency of a proceeding, the court determines that the minor has no father as defined in MCR 5.903(A)(4)____”
As relevant here, MCR 5.903(A) states:
(A) ... When used in this subchapter, unless the context otherwise indicates:
(1) “Child bom out of wedlock” means a child conceived and bom to a woman who is unmarried from the conception to the birth of the child, or a child determined by judi *199 cial notice or otherwise to have been conceived or bom during a marriage but who is not the issue of that marriage.
* * *
(4) “Father” means:
(a) a man married to the mother at any time from a minor’s conception to the minor’s birth unless the minor is determined to be a child bom out of wedlock[.]
The essence of this rule is that a child has a father if the child’s mother is married at any time during gestation unless the court determines “by judicial notice or otherwise” that the child was not “the issue of the marriage.”
In this case, CAW had a married mother and father, Deborah Ann Weber and Robert Rivard, during the gestation period. Moreover, no finding was ever made by the court that CAW was not the issue of the marriage. The termination of Rivard’s parental rights was not a determination that CAW was not the issue of the marriage and, thus, that Rivard was no longer his father; rather, it was only " a determination that Rivard’s legal rights were terminated. Thus, the requirements of the court rule to give Heier, a putative father, standing were not met.
Finally, in the Court of Appeals opinion, as well as the dissent, there is much angst about the perceived unfairness of not allowing Heier the opportunity to establish paternity. We are more comfortable with the law as currently written. There is much that benefits society and, in particular, the children of our state, by a legal regime that presumes the legitimacy of children bom during a marriage. See Serafin v Serafin, 401 Mich 629, 636; 258 NW2d 461 (1977). It is likely that these values, rather than failure to consider the plight of putative fathers who wish to invade mar *200 riages to assert paternity claims, motivated the drafters of the rules and statutes under consideration.
IV
We reverse the decision of the Court of Appeals because the circuit court properly denied Heier’s motion to intervene. We remand to the Court of Appeals to address Heier’s constitutional issues.
Corrigan, C.J., and Young and Markman, JJ., concurred with Taylor, J.

 MCL 712A.1 et seq.

 This is apparently a misspelling of Larry Heier’s last name.

 The notice was published with two errors: Heier’s name was misspelled in the same manner as in the petition, and the date of the hearing was incorrectly stated as August 9.

 Specifically, MCL 712A.19b(3)(a)(ii) (desertion, for Rivard only), (3)(c)(i) (conditions that led to adjudication continue to exist), (3)(g) (failure to provide proper care and custody), and (3)0) (reasonable likelihood that the child will be harmed if returned to the parent’s home).

 Rivard did not appeal the termination of his parental rights, and the Court of Appeals affirmed the termination of Weber’s parental rights. In re Weber, minors, unpublished memorandum opinion, issued October 26, 2001 (Docket No. 232206).

 In relevant part, MCL 712A.2(b) gives the court jurisdiction in proceedings concerning a juvenile:
(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship
(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.