*In re* CAW (ON REMAND)

Docket No. 235731. Submitted August 19, 2003, at Lansing. Decided October 23, 2003, at 9:05 A.M.

The Family Independence Agency filed a petition in the Macomb Circuit Court, Family Division, initiating a child protective proceeding relating to abuse and neglect by Deborah A. Weber and her husband, Robert Rivard, of three minor children, including CAW, born to Deborah A. Weber. It alleged that Larry Heier might be the biological father of CAW. Heier received no timely notice of the proceedings. After the first hearing, the court, Pamela Gilbert O'Sullivan, J., amended the petition to eliminate any reference to Heier. After Weber and Rivard pleaded no contest to the amended petition, the FIA petitioned for the termination of their parental rights. Following termination of those rights, Heier moved to intervene to claim that he was CAW's father. The Court of Appeals, WHITBECK, P.J., and NEFF and HOEKSTRA, JJ., affirmed the termination of Weber's parental rights in an unpublished memorandum opinion (Docket No. 232206). The trial court denied Heier's motion on the basis that Heier lacked standing to intervene because Rivard had been the legal father of CAW. The Court of Appeals, BANDSTRA and GAGE, JJ. (FITZGERALD, P.J., dissenting), reversed and remanded to the circuit court on the ground that once Rivard's parental rights were terminated, CAW was without a father, which gave the circuit court the right to determine the child to be born out of wedlock and to take appropriate steps to determine the identity and rights of the biological father, giving Heier standing to intervene. 253 Mich App 629 (2002). The Supreme Court granted leave to appeal limited to the issue whether a putative father has standing to intervene in a child protective proceeding under the juvenile code in which the child involved has a legal father. The Supreme Court held that the putative father did not have standing to intervene, reversed the judgment of the Court of Appeals, and remanded the matter to the Court of Appeals to consider Heier's argument that the juvenile code, by precluding standing to intervene in a child protective proceeding, deprived him of a fundamental right without the benefit of procedural or substantive due process. 469 Mich 192 (2003).

On remand, the Court of Appeals *held*:

A putative father lacks standing to challenge the parentage of a child born while the mother was legally married to another man if a prior determination on paternity regarding the mother's husband has not been made. Such a determination was not made in this matter. Therefore, Heier does not have a protected liberty interest in his relationship with CAW.

Affirmed.

Gage, J., concurring in the result only, stated her deep concern over the outcome of this case, where a man who claims to be a child's father, and who has established some relationship with the child and provided some support for the child, is denied the opportunity to intervene in a child protective proceeding to have his paternity established and his fitness tested. The court rules should be amended to specifically allow a putative father to intervene in a child protective proceeding if he is able to raise a legitimate question regarding paternity.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Chantal B. Fennessey*, Assistant Attorney General, for the Family Independence Agency.

*Dinning & Greve, P.L.C.* (by *Ronald H. Greve*), for Larry Heier.

ON REMAND

Before: Fitzgerald, P.J., and Bandstra and Gage, JJ.

Fitzgerald, P.J. This case is before us on remand from the Supreme Court.[1] In our earlier opinion,[2] a divided panel[3] of this Court held that Larry Heier, a putative father, had standing to intervene in a child protective proceeding under the juvenile code.[4] The

---

[1] *In re CAW*, 469 Mich 192; 665 NW2d 475 (2003).

[2] *In re CAW*, 253 Mich App 629; 659 NW2d 657 (2002).

[3] Fitzgerald, P.J., dissented.

[4] MCL 712A.1 *et seq.*

majority held that the termination of Robert Rivard's parental rights at the conclusion of the child protective proceeding was effectively a finding " 'by judicial notice or otherwise' "[5] that CAW was not the issue of the marriage of Deborah A. Weber and Rivard and that Rivard no longer had any legal rights as father. Thus, the majority concluded that the door was opened for the putative father to have standing to establish his paternity.

The Supreme Court disagreed and reversed the decision of this Court, concluding that the "termination of Rivard's parental rights was not a determination that CAW was not the issue of the marriage and, thus, that Rivard was no longer his father; rather, it was only a determination that Rivard's legal rights were terminated. Thus, the requirements of the court rule[6] to give Heier, a putative father, standing were not met."[7] The Supreme Court remanded this case to this Court with instructions to address Heier's argument that the juvenile code, by precluding standing to intervene in a child protective proceeding, deprives him of a fundamental right without the benefit of procedural or substantive due process. We disagree.

In *Girard v Wagenmaker*,[8] the Court held that a putative father lacks standing to challenge the parentage of a child born while the mother was legally married to another man if a prior determination on paternity regarding the mother's husband has not been made. In *Hauser v Reilly*,[9] this Court noted that, not-

---

[5] 253 Mich App 637, quoting former MCR 5.903(A)(1).

[6] Former MCR 5.903(A)(4).

[7] 469 Mich 199.

[8] *Girard v Wagenmaker*, 437 Mich 231; 470 NW2d 372 (1991).

[9] *Hauser v Reilly*, 212 Mich App 184; 536 NW2d 865 (1995).

withstanding the holding in *Girard,* the state constitution still affords a putative father a due process interest in proceedings related to paternity.[10] Although the Court rejected the argument that a biological link alone established a due process liberty interest for a putative father, the Court adopted the test advocated by Justice Brennan in *Michael H v Gerald D:*[11]

> We agree with the reasoning of Justice Brennan in *Michael H.* Following that analysis, if plaintiff in this case had an established relationship with his child, we would hold that he had a protected liberty interest in that relationship that entitled him to due process of law. However, because plaintiff has no such relationship, we hold that the Paternity Act did not deny him his right to due process. [*Hauser, supra* at 188.]

In *McHone v Sosnowski,*[12] this Court refused to apply *Hauser* even though there was evidence that the plaintiff had established some degree of a relationship with the child. The Court concluded that *Hauser's* discussion of a putative father's liberty interest was dictum, and it was best to leave such a determination for the Supreme Court of Michigan, because "[t]he barrier provided by the Supreme Court in *Girard, supra,* cannot be hurdled in this Court."[13] Thus, *McHone* precludes a finding that Heier has a protected liberty interest in his relationship with CAW.[14]

---

[10] *Id.* at 186-188.

[11] *Michael H v Gerald D,* 491 US 110; 109 S Ct 2333; 105 L Ed 2d 91 (1989).

[12] *McHone v Sosnowski,* 239 Mich App 674; 609 NW2d 844 (2000).

[13] *Id.* at 679-680.

[14] *Girard, Hauser,* and *McHone* each involve proceedings under the Paternity Act. Nonetheless, each case involves a situation concerning a putative father's liberty interest in the parenting of his child, and the anal-

Even if *Hauser* were followed and the test discussed by Justice Brennan applied, Heier cannot show that he was denied his right to due process. Justice Brennan defined a substantial parent-child relationship as, " '[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child . . . ." ' "[15] There is no record support that Heier had a relationship with CAW that could be defined as substantial or to the point that Heier was actively fulfilling his role as a parent. There are indications that Heier visited and played with CAW on a regular basis when CAW lived with Weber and that he provided some support. However, although Heier claimed to be aware that CAW was in foster care and had been removed from Weber's custody, he did nothing more than possibly visit with CAW at the foster parent's home a few times. He did not even immediately come forward when Weber's parental rights were terminated. The record does not support a finding that there was a substantial parent-child relationship in this case.[16]

Affirmed.

BANDSTRA, J., concurred.

GAGE, J. (*concurring*). I concur in the result only. I write separately to express my deep concern over the outcome of this case. The record here demonstrates

---

ysis would apply equally in a child protective proceeding under the juvenile code.

[15] *Michael H, supra*, at 143, quoting *Lehr v Robertson*, 463 US 248, 261; 103 S Ct 2985; 77 L Ed 2d 614 (1983), quoting *Caban v Mohammed*, 441 US 380, 392; 99 S Ct 1760; 60 L Ed 2d 297 (1979).

[16] Because Heier lacked standing to intervene, we need not address his argument that he was not provided with proper notice of the proceedings.

that during the lower court proceedings Robert
Rivard's paternity of CAW was called into question by
the natural mother. In the pleadings filed in this case,
it was suggested that Mr. Rivard was not CAW's natu-
ral father and that Larry Heier was. While I acknowl-
edge that Mr. Heier's late attempt at intervention is
troubling, I find it more disturbing that a man who
claims to be a child's father, and has established
some relationship, albeit not substantial, with the
child and provided some support for the child, can be
denied the opportunity to intervene in a child protec-
tive proceeding to have his paternity established and
his fitness tested. A majority of our Supreme Court
has decided that the Legislature did not intend to
allow putative fathers an opportunity to intervene in
child protective proceedings. I do not believe the pol-
icy considerations that apparently gave comfort to the
majority of our Supreme Court supersede the pre-
sumption that a child is better off in the care of a fit
natural parent rather than with strangers in foster
care or through adoption. See *Troxel v Granville*, 530
US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000). Perhaps,
for the sake of clarity, the court rules should be
amended to specifically allow a putative father to
intervene in a child protective proceeding if he is able
to raise a legitimate question about paternity.