Cavanagh, J.
(dissenting). Today, the majority holds yet again that our court rules deprive a putative father of the right to participate in child protective proceedings. This viewpoint is not supported by our court rules and it denies putative fathers, as well as children, their due process rights. Therefore, I respectfully dissent.
As stated in my dissent in In re CAW, 469 Mich 192, 209; 665 NW2d 475 (2003), “the Legislature intended to allow putative fathers an opportunity to intervene in child protective proceedings. Hence, the majority *638 errs by applying MCR 5.921(D) in a manner that prohibits standing.” The court rules allow for a judicially determined judgment of paternity to be used to determine that a man is a “father,” and the court rules make no mention that this must be done pursuant to the Paternity Act. See MCR 5.903(A) and 5.921(B)(3), now MCR 3.903(A) and 3.921(B), (C).
In this case, the putative father was named a party to the child protective proceedings by the Family Independence Agency. His participation was compelled, which makes the majority’s determination that he does not have the right to participate even more outrageous. However, even if he had not been named a party, to summarily deny him the right to be determined to be a “father” denies the putative father his due process rights, but, more importantly, it denies courts the opportunity to determine what is in the best interests of the children. This is never more evident than in a child protective proceeding, where the children’s legal parents may have their parental rights terminated, thereby leaving the children with no legal parents and, possibly, no caregivers. Denying putative fathers the right to participate in the proceedings may deprive the children of a chance to have a loving relationship with an interested and caring parent.
The children’s legal mother in this case was a cocaine addict and frequently homeless. After years of abuse and neglect, her rights are being terminated. The children’s legal father is in prison and wants nothing to do with the children. The children’s putative father seeks nothing more than a chance to be determined a “father” so that he may have his custody and visitation rights considered by the courts. Denying him this right deprives the courts of valuable *639 information necessary to determine the best interests of the children. “Courts making paternity and custody determinations have the authority to inquire about a child’s putative father or parent in fact. Without it, a court would be deprived of the means necessary to ensure that a child’s best interests and due-process rights are protected.” CAW, supra at 209 (Cavanagh, J., dissenting).
Further, as detailed in my dissent in Girard v Wagenmaker, 437 Mich 231, 253-278; 470 NW2d 372 (1991), nothing in our statutes or court rules requires that a putative father must first establish paternity in a separate legal proceeding. This untenable rule effectively precludes a putative father from establishing a relationship with his child unless approved by the legal mother, regardless of whether the child has a legal father who plays a role in his life and regardless of the reasons the legal mother may choose to exclude the putative father.
Allowing a putative father standing to bring a paternity claim does not mean that the claim will automatically be decided in his favor. As I stated in Girard, supra at 272, allowing a putative father “standing to bring his paternity claim would not in any way endorse or prejudge his claim to provide support for the child, or his claim to custody or visitation rights.” The best interests of the child are paramount, and the child’s best interests can only be properly assessed if all parties are given the opportunity to have their day in court. Unlike the majority, “I am unwilling to make the arbitrary assumption that no support, custody, or visitation claim by a putative father, regarding the child of a married woman, will ever have sufficient *640 merit to justify recognizing the standing of any such claimants.” Id.
Further, unlike the majority, I do not believe in closing my eyes and pretending that the putative father does not exist. Some may argue that denying the putative father standing protects the sanctity of marriage. But as I stated in Girard, supra at 271, “It is surely a bit late to talk of preserving the ‘sanctity’ of the marital family by the time a situation like the one alleged in this case has arisen.”
I do not believe a putative father should be cast as a villain merely because he seeks to establish a relationship with his child. Whether the establishment of such a relationship will be in the child’s best interests is a matter for the court to decide,[1] but to deny a putative father standing to even make such a request deprives him, and the child, of due process rights. Further, it is noteworthy that the majority’s refusal to allow putative fathers standing does not emanate solely from a concern to protect intact families. In cases in which there was not an intact family, the majority has continued to deny putative fathers, and their children, their due process rights. See, e.g., Pniewski v Morlock, 469 Mich 904 (2003); CAW, supra at 199.
An arbitrary, bright-line rule puts the illusion of an intact family over the reality that children’s lives are at stake. This case highlights the problem. The legal mother testified that the putative father was the biological father of the children and the legal father also testified that he was not the biological father of the *641 children and did not want to participate in the proceedings. However, if the legal mother and the legal father had not offered testimony rebutting the presumption of legitimacy, the putative father would have had no recourse.
Finally, a court is statutorily mandated to assess the best interests of the child in all disputes involving a minor child’s custody. See MCL 722.24. However, the majority finds that the best interests control when there is a custody dispute between two legal parents, but not when a dispute involves a putative parent. Children have due process rights to be protected from arbitrary harm by the government. The child’s right to have his best interests decided by a court of law should not be inferior to a legal father’s right to custody.
I wholeheartedly agree with the majority that the record contains evidence that supports a finding that, during the proceeding, the legal mother and the legal father rebutted the presumption that the children were the issue of their marriage. However, while I believe that there is more to being a parent than mere biology, I also believe that there is more to being a parent than the rights conveyed by a marriage license. A narrow view of standing grounded in neither statute nor court rule should not defeat a meaningful examination of the best interests of the children. Therefore, I respectfully dissent.
Kelly, J., concurred with Cavanagh, J.

 See, e.g., In re Jesusa V, 32 Cal 4th 588; 10 Cal Rptr 3d 205; 85 P3d 2 (2004).