**S T A T E   O F   M I C H I G A N**
**C O U R T   O F   A P P E A L S**

*In re* N. L. BENSON, Minor.

UNPUBLISHED
July 11, 2017

No. 335704
Oakland Circuit Court
Family Division
LC No. 2015-836609-NA

Before: O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to minor child NLB. His rights were terminated under MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood, based on conduct or capacity of parent, that child will be harmed if returned home). The trial court also terminated the parental rights of NLB's mother, CNJ (mother). However, mother has not appealed the termination order. We affirm.

The Department of Health and Human Services (DHHS) filed a petition to terminate respondent's and mother's parental rights after three-month-old NLB was hospitalized on September 21, 2015, suffering cardiac arrest. Medical staff performed 37 minutes of cardiopulmonary resuscitation (CPR) on NLB. Ultimately, medical staff discovered that NLB's cardiac arrest resulted from a liver laceration. Upon examination, medical staff also discovered that NLB had suffered 11 rib fractures. NLB's rib fractures had already begun the healing process, and were determined to have been the result of an injury suffered at least seven days before NLB's hospitalization. DHHS petitioned for permanent custody of NLB, and at the termination hearing, mother admitted that she "squeezed" NLB out of frustration several days before the hospitalization. A physician testified that mother's conduct likely caused NLB's rib fractures, but would not have caused the liver laceration, which occurred shortly before NLB entered cardiac arrest. According to testimony presented at the termination hearing, NLB was in respondent's care when she was hospitalized.

Respondent argues that this Court's holding in *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011), violates the Due Process Clauses of the federal and state constitutions, US Const, Am XIV, § 1; Const 1963, art 1, § 17, because it "provides constitutionally deficient protection to a respondent's due process interest in raising his or her children." We disagree.

Generally, a respondent must first raise an issue before the trial court to preserve an issue for appellate review. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008), citing *In re*

-1-

*NEGP*, 245 Mich App 126, 134; 626 NW2d 921 (2001), overruled on other grounds by *In re Morris*, 491 Mich 81 (2012). Respondent failed to challenge the constitutionality of the holding of *Ellis* in the trial court, therefore, this issue is unpreserved.

"We review unpreserved claims of constitutional error under a plain-error analysis." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011), citing *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999), and *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *VanDalen*, 293 Mich App at 135 (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Utrera*, 281 Mich App at 9, citing *Carines*, 460 Mich at 763.

In *Ellis*, this Court held "that termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j), and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *Ellis*, 294 Mich App at 35-36. See also *VanDalen*, 293 Mich App at 141 (holding that termination of parental rights under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j) was permissible, even in the absence of determinative evidence regarding the identity of the perpetrator of abuse, if the evidence showed that the respondents must have either caused intentional injuries to the minor children or failed to safeguard the minor children from injury).

" 'It is well established that parents have a significant interest in the companionship, care, custody, and management of their children. This interest has been characterized as an element of "liberty" to be protected by due process.' " *In re Gach*, 315 Mich App 83, 99; 889 NW2d 707 (2016), quoting *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). Thus, "[i]n acknowledgment of this interest, the 'statutory-grounds stage,' which focuses on the liberty interest of the parent, uses 'error-reducing procedures, such as the heightened standard of proof of clear and convincing evidence' to prevent the erroneous determination that a fit parent is unfit. This is because, at this stage of the proceeding, in addition to the parent's liberty interest, the child and parent both 'share a vital interest in preventing erroneous termination of their natural relationship until the petitioner proves parental unfitness.' " *Gach*, 315 Mich App at 99 (citations omitted).

There is no dispute that respondent has correctly identified that he had a liberty interest in raising NLB. However, respondent's contention that the holding of *Ellis* is unconstitutional is without merit. Respondent contends that if a minor child has suffered a serious injury while a respondent is a caregiver for that minor child, then *Ellis* allows a trial court that has taken jurisdiction over that minor child to proceed directly to a best-interest determination. In support of his contention, respondent analogizes his argument to this Court's holding in *Gach*. In *Gach*, this Court held that MCL 712A.19b(3)(*l*) was unconstitutional because that subsection, in

conjunction with MCL 722.638(1)(b)(*i*), and MCL 722.638(2),[1] ensured that a respondent "can only retain his or her parental rights if the trial court fails to conclude by a mere preponderance of the evidence that the termination is in the child's best interests." *Gach*, 315 Mich App 98. This Court concluded that

> under our current statutory scheme, when a parent has been subjected to an earlier termination of parental rights, if MCL 712A.19(b)(3)(i) does not justify the new termination because it cannot be clearly and convincingly proved that the parent had failed to remedy the earlier abuse or negligence that led to the earlier termination, application of MCL 712A.19(b)(3)(*l*) "disdains present realities in deference to past formalities" and simply "forecloses the determinative issues of competence and care." MCL 712A.19b(3)(*l*) thus fails to comport with due process in light of the fundamental liberty interest at stake. [*Id*. at 100-101 (citations omitted).]

Thus, despite respondent's analogy, *Gach* is readily distinguishable from *Ellis*. *Ellis* does not permit a trial court to "disdain present realities in deference to past formalities." Instead, it requires a trial court to determine that a respondent either caused or failed to prevent a minor child's injuries. See *Ellis*, 294 Mich App at 35-36.

Respondent contends that *Ellis* permits a trial court to terminate a respondent's parental rights "merely" if a child is injured while in his or her care, and that there is no way to rebut that "presumption of unfitness" if a minor child suffers a serious nonaccidental injury. Contrary to respondent's contention, there is nothing in the holding of *Ellis* that prevents a respondent from offering evidence to rebut such a finding. This Court explicitly recognized that the respondents in *Ellis* failed to "offer any plausible alternative explanation" as to the cause of that minor child's injuries. *Ellis*, 294 Mich App at 35. Notably, respondent also failed to offer any realistic explanation as to the cause of NLB's 11 fractured ribs and liver laceration, despite having the opportunity to do so during the adjudication trial and the termination hearing. Respondent's failure to provide a plausible explanation for NLB's injuries and to rebut the evidence offered by DHHS regarding NLB's injuries does not render the holding of *Ellis* unconstitutional.

Respondent also briefly contends that the trial court erred to the extent it relied on *Ellis* when it determined whether there was clear and convincing evidence to terminate his parental rights under MCL 712A.19b(3)(g), because the holding of *Ellis* did not incorporate that subsection. However, this Court reached a similar holding in *VanDalen*, and that holding explicitly applied to MCL 712A.19b(3)(g). *VanDalen*, 293 Mich App at 141. Therefore, respondent's contention is without merit.

---

[1] As explained by this Court, "MCL 722.638(1)(b)(*i*) requires a petitioner to submit a petition for authorization upon determining that there is risk of harm to the child and the parent's rights to another child were involuntarily terminated in accordance with the law of this state or similar law of other states. MCL 722.638(2) in turn directs that when a parent who is subject to such a petition 'is a suspected perpetrator . . . , the department shall include a request for termination of parental rights at the initial dispositional hearing . . . .' " *Gach*, 315 Mich App at 98.

Respondent contends that the trial court clearly erred when it found clear and convincing evidence to terminate his parental rights pursuant to MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Gonzales/Martinez*, 310 Mich App 426, 430-431; 871 NW2d 868 (2015), quoting *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

The petitioner has the "burden to establish by clear and convincing evidence the existence of a ground for termination." *Gonzales/Martinez*, 310 Mich App at 431, citing *JK*, 468 Mich at 210. "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013), citing *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000).

A trial court may terminate parental rights under MCL 712A.19b(3)(g) if it finds, by clear and convincing evidence, that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). Termination under MCL 712A.19b(3)(g) is permissible when evidence establishes that a respondent either caused intentional injuries to a minor child or when a respondent fails to safeguard a minor child from injury. See *VanDalen*, 293 Mich App at 141 (holding that termination of parental rights was proper under both MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j) even in the absence of determinative evidence regarding the identity of the abuser of minor children, because the evidence showed that the respondents either intentionally inflicted injuries on their minor children or failed to safeguard them from injury).

The trial court did not err when it found that clear and convincing evidence established that respondent failed to provide proper care or custody for NLB because NLB suffered severe injuries that respondent either caused or failed to prevent. Dr. Allison Ball testified that NLB suffered cardiac arrest, and that NLB underwent 37 minutes of CPR. NLB went into cardiac arrest because of "massive blood loss due to [a] tear in [NLB's] liver." Ball stated that an MRI of NLB's brain showed "some changes that indicate lack of oxygen," and Ball believed that NLB had suffered some brain damage due to the cardiac arrest episode.

NLB had 11 fractured ribs that were in the process of healing when she was hospitalized. Ball believed that the incident causing the fractures occurred at least seven days before September 21, 2015, and that the injury probably occurred "10 days to 2 or 3 weeks or more[.]" After NLB was hospitalized, mother and respondent were interviewed by Oakland County Sheriff's Office Detective Chad Emmons. According to Emmons, mother admitted that approximately "a week-and-a-half" before NLB's hospitalization,

> she got frustrated with the child and squeezed the child extremely hard with her hands. She said that the child's face was facing her and she was holding the child.

And she said that she believed that she caused injury to the child. She said that the child had been fussing since that day that that happened, and wasn't acting the same.

Assuming mother was responsible for NLB's 11 fractured ribs, respondent failed to protect NLB from this abuse. Further, Ball testified that it would not be possible to cause a liver laceration by squeezing a child's abdomen, and NLB's liver was lacerated within the 12 hours preceding NLB's hospitalization.

Neither respondent nor mother provided a plausible explanation for the cause of NLB's liver laceration, and there was no evidence to suggest that NLB had been in anyone else's care during the 12 hours before she was hospitalized. Mother claimed that she left NLB in respondent's care at 3:40 a.m. on the day of NLB's hospitalization. Respondent and mother brought NLB to the hospital after 12:30 p.m. that day. Respondent claimed that he and mother took NLB to the hospital after NLB fell off of an adult bed into a basket of clothing hangers. However, Ball opined that "a short distance fall into a bin of hangers would not generate enough force to cause such an injury to the liver," because the bed was "perhaps two to three feet off the ground," and "[c]hildren don't obtain liver lacerations from such a short distance."

Rather, Ball believed that NLB's liver laceration was the result of "abuse trauma." Upon hospitalization, NLB presented with a circular bruise on her left cheek and "a few small circular bruises on her right upper abdomen over the area where her liver is." Ball was "concerned that there was an external force that impacted her abdomen that caused the liver laceration underneath.," and that someone hurt [NLB] in this part of [NLB's] body with perhaps a fist." Ball testified that a three-month-old child would be unable to walk, and that children who cannot walk "should not be getting bruises." She opined that the bruises on NLB's face and upper abdomen were consistent with either fingers or knuckles because the bruises were equally spaced from one another. Her final impression was "that this was abuse trauma," because "this [was] a massive injury to the liver with evidence of an external force with no other explanation for how this very life-threatening and serious injury was obtained."

Termination under MCL 712A.19b(3)(g) is permissible when evidence establishes that a respondent either caused intentional injuries to a minor child or failed to safeguard a minor child from injury. *VanDalen*, 293 Mich App at 141. Here, the evidence establishes that respondent either caused NLB's liver laceration or failed to protect NLB from physical abuse on the day of NLB's hospitalization. Contrary to respondent's contention that the trial court failed to consider his ability to care for NLB, the trial court properly considered respondent's failure to protect NLB and respondent's possible abuse of NLB as evidence of his failure to provide reasonable care to NLB.

Additionally, the trial court did not clearly err when it terminated respondent's parental rights under MCL 712A.19b(3)(j), which provides that a parent's rights may be terminated if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

Respondent contends that DHHS failed to produce any evidence that respondent knew of NLB's abuse, or that he failed to protect NLB. In part, respondent relies on the trial court's

finding that DHHS failed to provide clear and convincing evidence that respondent battered, tortured, or severely abused NLB. However, respondent neglects to address that prior to making that finding, the trial court expressly stated that it was "convinced that [respondent] failed to protect" NLB. In addition to the facts discussed above, the trial court noted that respondent and mother admitted that NLB slept in their bed, even though respondent and mother were both aware that this was unsafe. Respondent admitted that on one occasion he woke up and discovered that NLB was underneath his and mother's bed. Considering the evidence of NLB's severe injuries and respondent's failure to provide a reasonable explanation for those injuries, we cannot conclude that the trial court clearly erred when it found that there was a reasonable likelihood that NLB would be harmed if returned to respondent's care. V*anDalen*, 293 Mich App at 141; *Ellis*, 294 Mich App at 35-36.

Finally, respondent contends that the trial court erred when it determined that termination of his parental rights was in NLB's best interests. We disagree.

"We review for clear error the trial court's determination regarding the children's best interests." *White*, 303 Mich App at 713 (citations omitted). "A finding is clearly erroneous if 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *Gonzales/Martinez*, 310 Mich App at 430-431, quoting *JK*, 468 Mich at 209-210.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *Gonzales/Martinez*, 310 Mich App at 434. " '[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home,' are all factors for the court to consider when deciding whether termination is in the best interests of the child." *Gonzales/Martinez*, 310 Mich App at 434, quoting *White*, 303 Mich App at 713 (alteration in original). "With respect to the trial court's best-interests determination, we place our focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

The trial court terminated respondent's parental rights to ensure NLB's safety and well-being. The trial court considered NLB's placement with her maternal grandfather, as well as its finding that NLB had not formed a bond with either mother or respondent. NLB was in mother's and respondent's care when she suffered 11 rib fractures and a liver laceration that resulted in an episode of cardiac arrest. The trial court found that respondent and mother failed to protect NLB, that NLB suffered severe injuries, and that neither respondent nor mother could explain the cause of NLB's injuries. Therefore, the trial court concluded that respondent and mother were unable to meet NLB's minimal needs. Further, the trial court found that NLB was at risk of further injuries and abuse if left in respondent's care. The trial court's findings were supported by evidence presented by DHHS, and we are not definitely and firmly convinced that the trial court made a mistake when it concluded that termination of respondent's parental rights was in NLB's best interests.

Respondent contends that termination was not in NLB's best interests because respondent voluntarily took parenting classes after NLB was hospitalized and was able to provide a home

for NLB. Further, respondent asserts that there is no clear evidence that he harmed NLB. Respondent's housing situation and his decision to take parenting classes after the termination petition was filed do not negate the fact that respondent failed to provide a safe and stable home free from abuse. Further, respondent failed to explain his absence from the termination hearing on September 7, 2016, or his apparent relocation to Illinois during the termination proceedings. Respondent's claimed ability to provide proper care and custody for NLB is undercut by his failure to appear at the termination hearing, his failure to offer evidence of a bond with NLB, and his failure to offer evidence of current ability to provide a stable home.

Respondent also briefly contends that the trial court failed to consider NLB's placement with her maternal grandfather. However, respondent's contention is without merit. The trial court expressly considered NLB's placement with her maternal grandfather in its written opinion and order.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens